1

2

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | |
|---|---|
| INTELLICHECK MOBILISA, INC., | CASE NO. C16-0341JLR |
| Plaintiff, | ORDER |
| v. | |
| HONEYWELL INTERNATIONAL INC., | |
| Defendant. | |

## I.    INTRODUCTION

16

17

18

19

20

21

22

Before the court is Defendant Honeywell International Inc.'s ("Honeywell")

motion to dismiss Plaintiff Intellicheck Mobilisa, Inc.'s ("Intellicheck") second amended

complaint.  (3d MTD (Dkt. # 82).)  The court has considered the motion, the parties'

submissions in support of and in opposition to the motion to dismiss, the relevant

portions of the record, and the applicable law.  Neither party has requested oral argument.

Being fully advised, the court DENIES Honeywell's motion to dismiss.

## II.    BACKGROUND

This case concerns allegations of patent infringement. Intellicheck provides "wireless technology and identity systems for various applications, including patented technology that instantly authenticates government-issued identification documents." (SAC (Dkt. # 74) ¶ 9.) In other words, Intellicheck's patented technology allows customers to determine whether government-issued IDs are authentic. (*See id.*) Intellicheck protects this patented technology through ownership of five patents: (1) United States Patent No. 7,478,067 ("the '067 Patent"); (2) United States Patent No. 5,864,623 ("the '623 Patent"); (3) United States Patent No. 6,463,416 ("the '416 Patent"); (4) United States Patent No. 6,920,437 ("the '437 Patent"); and (5) United States Patent No. 7,899,751 ("the '751 Patent") (collectively, "the Patents-in-suit"). (*Id.* ¶ 11.) Intellicheck claims that it provided information on the patented technology and the Patents-in-suit to several individuals, all of whom subsequently became Honeywell employees. (*Id.* ¶ 15.) Intellicheck believes that at least some of these individuals worked in the Honeywell division that developed the accused products. (*Id.*)

Intellicheck initially brought suit against Honeywell on March 7, 2016, alleging various counts of patent infringement under theories of direct, induced, and contributory infringement. (*See generally* Compl. (Dkt. # 1).) Honeywell moved to dismiss Intellicheck's induced and contributory infringement claims. (MTD (Dkt. # 25) at 2-3.) Subsequently, Intellicheck amended its complaint (FAC (Dkt. # 30)), which Honeywell again challenged by filing a motion to dismiss; in this second motion to dismiss, Honeywell attacked all asserted claims (2d MTD (Dkt. # 37) at 1-4).

The parties then filed a stipulated motion to temporarily stay the matter and extend the trial date for six months to explore the possibility of settlement. (Stip. Mot. (Dkt. # 48) at 1-2.) The court declined to stay the case but extended the trial date as requested and denied Honeywell's pending motions as moot without prejudice to renewing those motions at a later date. (10/28/16 Order (Dkt. # 49) at 1-2.) During the ensuing period, the parties engaged in negotiations but ultimately failed to reach a settlement. (Sanks Decl. (Dkt. # 58) ¶ 2.)

After settlement negotiations broke down, Intellicheck sought leave to file a second amended complaint (MTA (Dkt. # 57)), which the court granted on August 30, 2017 (8/30/17 Order (Dkt. #73)). In the second amended complaint, Intellicheck drops its contributory infringement claims and instead brings ten counts of infringement against Honeywell, alleging that Honeywell's development and sale of various accused products directly and indirectly infringed upon the five Patents-in-suit. (SAC ¶ 13.) Honeywell moves to dismiss all ten counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* 3d MTD.) The court now reviews Intellicheck's allegations of direct and indirect infringement.

**A.    Direct Infringement Counts**

1.  Direct Infringement of the '067 Patent

Intellicheck asserts in Count I that Honeywell directly infringes Claim 2 of the '067 Patent. (SAC ¶¶ 34-46.) Claim 2 is a dependent claim that builds upon Claim 1; together, the two claims protect an apparatus with (1) an "information reader" that reads information from a driver license issued by a certain jurisdiction, with that information

having a "predetermined format corresponding to said jurisdiction" (*id.*, Ex. A ("'067 Patent") 14:63-67)[1]; (2) equipment that receives the read information and determines whether that information "comports with said predetermined format" and outputs the information to a remote location through a signal path for further processing ('067 Patent 15:1-7); and (3) said information reader that reads a driver license containing "machine readable information." (*id.* 15:8-10).

Intellicheck asserts that Honeywell's scanners that are preinstalled with the Easy DL software "read[] the machine readable information from a driver license via the barcode on the back of the driver license" and then "determine[] whether the information read comports with the predetermined format for that specific jurisdiction (i.e. the State of Washington)," using "the data received from the American Association for Motor Vehicle Administrators (AAMVA)." (*E.g.*, SAC ¶ 39.)[2] The information is then allegedly sent to a "remote location" such as a host computer "via a signal path" for further processing. (*See, e.g., id.*) Intellicheck emphasizes that Honeywell's scanners can "read the machine readable information . . . from the driver license." (*See, e.g., id.*) Intellicheck seeks to recover damages sustained from these allegedly infringing acts. (*Id.* ¶¶ 44-46.)

---

[1] The court may consider the patents, which are attached to the operative complaint, in determining whether Intellicheck has adequately alleged facts in support of its claims. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

[2] Throughout its complaint, Intellicheck repeats the same allegations of direct infringement for each accused product. (*See id.* ¶¶ 39-43.) Thus, the court recounts the allegations once and uses "*e.g.*" to signal when Intellicheck restates those allegations for other accused products.

1      2.  <u>Count III: Direct Infringement of the '623 Patent</u>

2      Count III alleges that Honeywell directly infringed Claims 1 and 15 of the '623

3 Patent. (*Id.* ¶ 62.) Claim 1 protects an apparatus that authenticates documents and can:

4 (1) read the information on the document; (2) determine whether the document has a

5 format that corresponds to a reference format by comparing the two formats; (3)

6 "pars[e]" the read information into "jurisdictional segments" to then compare against the

7 "predetermined values" of reference jurisdictional segments; (4) compare the read

8 information to determine whether the jurisdictional segments match the predetermined

9 values; and (5) generate a verification signal if there is a match between the two

10 checksums.[3] (*Id.*, Ex. B ("'623 Patent") 15:14-41.) Claim 15 protects the method for

11 authenticating a driver license, comprised of the steps that are listed in Claim 1. (*See*

12 '623 Patent 16:49-17:7.)

13      As to Claim 1, Intellicheck alleges that Honeywell's products read the information

14 on the document and determine "whether the document format corresponds to the format

15 from the issuing jurisdiction." (*E.g.*, SAC ¶ 62.) The scanners purportedly parse the read

16 information to determine whether or not the information matches the predetermined

17 values. (*E.g.*, *id.*) Additionally, the product "completes a checksum wherein the scanner

18 compares the human recognizable information with the machine coded information" and

19 "generates a signal" if there is a match. (*E.g.*, *id.*) Moreover, Intellicheck pleads that

20

---

21    [3] The parties agree that a "checksum" is a "value that is used to test for tampering or alteration of information and is calculated by sequentially combining the constituent parts of a

22 chunk of data with a series of arithmetic or logical operations." (Jt. Claim Constr. St. (Dkt. # 85) at 2.)

1   Honeywell utilizes the method protected by Claim 15 in product testing, where the

2   products are used to read information from a driver's license; determine whether the

3   license format matches the format of a certain jurisdiction; parses the information into

4   jurisdictional segments; and compares the information to ensure a match. (*E.g.*, *id.* ¶ 63.)

5   The products are also used to compare two checksums and generate a signal if the

6   information matches. (*E.g.*, *id.*)

7       3. Count V: Direct Infringement of the '416 Patent

8       Count V alleges direct infringement of Claim 4 of the '416 Patent. Claim 4

9   protects a method of authenticating identification documents, wherein (1) "information

10  segments included in said identification document" are extracted; (2) reference data from

11  a storage means is retrieved; (3) the format of the extracted information segments is

12  compared to the format of the retrieved reference data; (4) if the formats match, the

13  information segment is compared to "a predetermined acceptance criteria"; and (5) a

14  signal is provided if the predetermined acceptance criteria is met. (*Id.*, Ex. C ("'416

15  Patent") 15:58-16:13.)

16      Intellicheck asserts that Honeywell infringes Claim 4 in its product testing

17  processes because the products are used to "authenticate a portion of an identification

18  document" by extracting the information to be checked; determining whether the

19  information is in the same format as the reference data; and calculates the necessary

20  information to determine whether the information meets a certain "predetermined

21  acceptance criteria." (SAC ¶ 86.) For example, Intellicheck alleges that Honeywell's

22  product will extract a date of birth from the ID; determine whether format of the date of

birth conforms with the known format for the jurisdiction; and then calculate an age and signal whether that information meets the age cutoff. (*See id.*)

### 4. Count VII: Direct Infringement of the '437 Patent

Count VII alleges that Honeywell directly infringes Claim 14 of the '437 Patent. (*Id.* ¶¶ 104-15.) Claim 14 protects "[a] method for reading information from a driver license for use in an age-restricted activity." (*Id.*, Ex. D ("'437 Patent") 16:5-6.) The steps consist of: (1) reading "machine readable information" from the license; (2) determining an "identifier" from the information that corresponds to the issuing jurisdiction of the license; (3) extracting the date of birth and expiration date using the identifier; (4) checking either the date of birth or expiration date against a predetermined value for conformance; (5) if the check is successful, calculating the age and displaying that age along with an indication that the license conforms; and (6) if the check is unsuccessful, displaying an indication that the license does not conform. ('437 Patent 16:8-29.)

Intellicheck alleges that Honeywell uses the accused products in product testing to "read information from a driver's license[] for age-restricted activities." (*E.g.*, SAC ¶ 108.) Intellicheck claims that these products read machine readable information from a driver license and determine whether that information matches the AAMVA; extracts the date of birth and expiration date; verifies whether the date of birth is in the known format and checks for conformance; and calculates the age. (*E.g.*, *id.*) Then, the products signal "whether the license is valid and whether the person is old enough to purchase alcohol." (*E.g.*, *id.*)

1        5.  Count IX: Direct Infringement of the '751 Patent

2        Count IX alleges that Honeywell directly infringed Claims 22 and 32 of the '751

3   Patent.  Claim 22 protects "non-transitory computer memories" that are encoded with "an

4   identification data structure and a reference data structure" and used to "determine

5   whether an individual is authorized to perform an activity."  (*Id.*, Ex. E ("'751 Patent")

6   16:42-45.)  To make this determination, the identification data structure captures

7   information read from an ID that conforms to "an established format of a jurisdiction"

8   and uses an Issuer Identification Number to determine what jurisdiction issued the ID.

9   ('751 Patent 16:45-52.)  The reference data structure contains information on a number of

10  jurisdictional formats; when the established format is one of the jurisdictional formats in

11  the reference data structure, the reference data structure parses and populates the

12  identification data structure with the read identification information.  (*Id.* 16:52-56.)

13        Claim 32 protects "a portable device" with (1) a "reader component" that reads

14  portions of machine-readable information from an ID, including the Issuer Identification

15  Number; (2) a "reference component" that specifies the format of the issuing jurisdiction;

16  (3) a "parser component" to parse the read information according to the specific format;

17  (4) a "conformance component" that compares the parsed information to a set value; and

18  (5) an "output component" that shows the result of the comparison.  (*Id.* 17:19-18:3.)

19        Intellicheck claims that Honeywell's products infringe Claims 22 and 32.  The

20  products are used with a computer and access point to read information from a driver's

21  license and identify the issuer of the license through its Issuer Identification Number.

22  (*E.g.*, SAC ¶ 131.)  The products then parse the information from the license into

1    segments to determine whether the person is authorized to perform the transaction. (*E.g.*,

2    *id.*) The product then will indicate whether or not the person is authorized. (*E.g.*, *id.*)

3    **B.    Indirect Infringement Counts**

4        Intellicheck pairs each of the above direct infringement counts with a count of

5    indirect infringement of the respective patent. (*See id.* ¶¶ 47-57 (Count II alleging

6    indirect infringement of the '067 Patent).) Each count claiming indirect infringement

7    repeats the same allegations: Intellicheck claims that Honeywell "actively and

8    knowingly" induced others to make, use, or sell the accused products; licensed the

9    products to others and provided instructions that enabled licensees to practice the claimed

10    instructions; and advertised and promoted the accused products in a way that instructed

11    customers to practice the claimed inventions. (*E.g.*, *id.* ¶ 50.) For instance, Honeywell

12    literature purportedly instructs users on how to use its products and the accompanying

13    software, and Intellicheck claims that Honeywell customers are "following Honeywell's

14    instructions and using the accused products to authenticate driver's licenses." (*E.g.*, *id.*

15    ¶¶ 51-52.) Due to the harm sustained from this indirect infringement, Intellicheck seeks

16    damages, as well as attorney's fees if applicable. (*E.g.*, ¶ 57.)

17        Intellicheck asserts that Honeywell had actual notice of the various Patents-in-suits

18    through Honeywell employees who previously worked with Intellicheck. (*Id.* ¶¶ 15-30.)

19    For instance, Intellicheck alleges that Honeywell had notice of the '623 Patent and the

20    '416 Patent as early as 2007, when Honeywell acquired a company that previously

21    contracted with Intellicheck. (*Id.* ¶ 16.) Intellicheck claims that it had provided several

22    employees of the acquired company with its patent and patent applications, including

both the '623 and '416 Patents. (*Id.*) Similarly, Intellicheck claims that Honeywell

received notice of the '437 Patent through a former Intellicheck employee who was hired

by Honeywell in December 2010. (*Id.* ¶ 24.)

As for the '067 and '751 Patents, Intellicheck pleads that Honeywell had actual

notice "at least as of the date of receiving [Intellicheck's] notice letter[4] on March 8,

2016[,] which was forty-five (45) days before being served with the Complaint on April

22, 2016." (*Id.* ¶¶ 27, 29.) Thus, Intellicheck claims that Honeywell's continued acts of

inducement were done after Honeywell was aware of these Patent-in-suits and with the

knowledge that its acts constituted patent infringement. (*See id.* ¶¶ 28, 30.)

### III. ANALYSIS

Honeywell challenges all ten counts brought by Intellicheck. (*See generally* 3d

MTD.) Honeywell asserts that the direct infringement counts fail to state a claim under

Rule 12(b)(6). (*See id.* at 3-4.) Furthermore, because each indirect infringement count

requires that direct infringement is occurring, Honeywell concludes that the failure to

adequately plead the direct infringement counts renders the indirect infringement counts

insufficient as well. (*Id.* at 4.) Moreover, Honeywell argues that the indirect

infringement counts fail because Intellicheck does not sufficiently allege Honeywell's

knowledge of the Patents-in-suit and their infringement, or that Honeywell took

affirmative steps to induce others to infringe. (*Id.* at 4-5.) For the reasons below, the

---

[4] A notice letter generally informs the putative infringing party of potential infringement. Here, Intellicheck claims that the notice letter included a copy of the complaint and sought to "amicably resolve the issues raised in the [c]omplaint prior to serving the [c]ompliant." (Resp. at 1.)

1   court concludes that Intellicheck has adequately pleaded both its direct and indirect

2   infringement counts and therefore denies Honeywell's motion.

3   **A.**   **Legal Standard**

4         Prior to December 1, 2015, the Federal Circuit directed district courts to judge

5   direct infringement allegations by whether they meet the standard set forth in Form 18 of

6   the Appendix of Forms to the Federal Rules of Civil Procedure, not by whether they

7   satisfy the more stringent pleading standard set forth in *Bell Atlantic Corporation v.*

8   *Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Atlas IP LLC*

9   *v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 WL 1719545, at *1 (N.D. Cal.

10   Mar. 9, 2016). However, the amendments to the Federal Rules of Civil Procedure that

11   took effect on December 1, 2015, effectively abrogated this practice. *Id.* at *2. Thus,

12   "Form 18 no longer provides a safe harbor for pleading direct infringement." *Incom*

13   *Corp. v. Walt Disney Co.*, No. CV15-3011 PSG (MRWx), 2016 WL 4942032, at *3

14   (C.D. Cal. Feb. 4, 2016). Allegations of direct infringement are now subject to the same

15   pleading standards that govern any other claim brought in federal court. *Id.*

16         Accordingly, here, dismissal for failure to state a claim "is proper if there is a lack

17   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

18   legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)

19   (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must

20   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

21   plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A

22   claim has facial plausibility when the plaintiff pleads factual content that allows the court

1 | to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2 | *Id.* Although the standard "asks for more than sheer possibility that a defendant has acted

3 | unlawfully," it is not "akin to a probability requirement." *Id.* Thus, the plausibility

4 | requirement "simply calls for enough fact[s] to raise a reasonable expectation that

5 | discovery will reveal" liability for the misconduct alleged. *Twombly*, 550 U.S. at 556.

6 |       When considering a motion to dismiss under Federal Rule of Civil Procedure

7 | 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

8 | party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

9 | 2005). The court must accept all well-pleaded facts as true and draw all reasonable

10 | inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

11 | F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s]

12 | of the elements of a cause of action," however, "are not entitled to the presumption of

13 | truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*,

14 | 550 U.S. at 555). On a motion to dismiss, the court may consider the pleadings,

15 | documents attached to the pleadings, documents incorporated therein, or matters of

16 | judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van*

17 | *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

18 |       In the patent context, it is not enough to "[m]erely nam[e] a product and provid[e]

19 | a conclusory statement that it infringes a patent." *Incom Corp.*, 2016 WL 4942032, at *3.

20 | "Sufficient allegations would include, at a minimum, a brief description of what the

21 | patent at issue does, and an allegation that certain named and specifically identified

22 | products or product components also do what the patent does, thereby raising a plausible

1 claim that the named products are infringing." *Bender v. LG Elecs. U.S.A., Inc.*,

2 No. C09-02114 JF (PVT), 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010).[5] Such

3 allegations would "provide enough specificity for the defendant to formulate a response"

4 and "permit the [c]ourt to 'draw the reasonable inference that the defendant is liable for

5 the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

6 **B.    Direct Infringement Counts**

7        Honeywell contends that Intellicheck fails to plead sufficient factual allegations

8 from which the court can infer liability for any of the direct infringement counts. (*See* 3d

9 MTD at 8.) The court addresses the sufficiency of each direct infringement count.

10       1. Count I

11       Honeywell argues that Intellicheck fails to state a claim in Count I because

12 Intellicheck does not provide any factual support for whether the accused products

13 "determin[e] whether the read information comports with said predetermined format."

14 (3d MTD at 9-10; *see* '067 Patent 15:2-4.) The court disagrees and finds that Intellicheck

15 has sufficiently pleaded factual allegations for the court to infer that the accused products

16 determine whether the read information comports with a predetermined format.

17       Intellicheck alleges that after reading information from the barcode on the back of

18 a driver license, the accused products then determine whether that information comports

19 with the format of the issuing jurisdiction, such as the State of Washington, by using the

20

21 ──────────────

        [5] Although *Bender* was litigated before the abrogation of Form 18, the court there
22 discussed the viability of a patent complaint under the pleading standards of *Twombly* and *Iqbal*.
   *See* 2010 WL 889541, at *6.

data received from the AAMVA. (SAC ¶ 39.) As support, Intellicheck points to

Honeywell product manuals, which state that the Honeywell software "takes the

guesswork out of age verification" and supports government-issued IDs from various

jurisdictions. (*Id.*, Ex. F at 1-2.) Another manual lists the various jurisdictions that the

Honeywell software supports, explicitly specifying that it cannot read licenses "that do

not comply with the formatting standards set forth by the [AAMVA]." (*Id.*, Ex. G at 1.)[6]

These factual allegations, based on Honeywell's own materials, indicate that at

some point, the accused products consult the format of the issuing jurisdiction as

governed by the AAMVA, and that the different formats for the different jurisdictions

play a role in the accused products' ability to read the data on the license. Although

Honeywell insists that neither exhibits F or G contain information regarding a

predetermined format (3d MTD at 11), the inference that the listed jurisdictions may have

varying formats—especially given that the AAMVA oversees formatting standards—is a

reasonable one that the court is authorized to make at this stage. Thus, the court finds

that such allegations are sufficient for the court to infer that the accused products

determine whether the read information comports with a predetermined format.

2. Count III

Honeywell contends that the allegations regarding direct infringement in Count III

"gloss over the absence of some key claim element components" and "completely

_____

[6] Exhibit G is an "Integration Guide" for Honeywell software with pre-assigned page numbers. (*See generally* SAC, Ex. G.) The court's citations to Exhibit G use those page numbers.

1 ignor[e] one whole claim element." (3d MTD at 12.) Honeywell then lists, in chart form,

2 a comparison of the claim language with Intellicheck's pleadings. (*Id.* at 13-14.)

3 Honeywell believes that Intellicheck fails to allege that the accused products (1)

4 determine whether the license format corresponds to a reference license format; (2) parse

5 the read information into jurisdictional segments; (3) ascertain the predetermined values

6 of those jurisdictional segments; or (4) display a signal if there is a match. (*Id.* at 14-15.)

7       The defendant in *Incom Corporation v. Walt Disney Company* raised a similar

8 challenge in its motion to dismiss direct infringement allegations. 2016 WL 4942032, at

9 *3. In that case, the defendant argued that the complaint was "too conclusory" and thus

10 failed to state a claim. *Id.* However, the court concluded that the complaint did "more

11 than name a product and baldly conclude that it infringes a patent which belonged to

12 [p]laintiff." *Id.* The court observed that the plaintiff attached the patents-in-suit,

13 described the technology in the patent, named specific infringing products, and detailed

14 how those products performed the same function as the patented system. *Id.*

15 Accordingly, the court concluded that the complaint stated a plausible claim for direct

16 infringement. *Id.*

17       The court reaches a similar conclusion here in regard to Count III. Like the

18 plaintiff in *Incom*, Intellicheck has attached the patents-in-suit, described its protected

19 technology, identified the accused products, and described how those products allegedly

20 perform the same functions or methods that are protected by the '623 Patent. *See id.*

21 This showing is more than a conclusory statement of infringement.

22 //

1    Although Honeywell is correct that there are certain words in the '623 Patent that
2    are not repeated verbatim in Intellicheck's complaint (*see* 3d MTD at 13-14), that
3    omission hardly justifies dismissal. For instance, the '623 Patent states that the claimed
4    invention will determine whether the format of the license information corresponds to "a
5    reference license format." ('623 Patent 15:21-23.) The complaint describes the accused
6    products as determining "whether the document format corresponds to the format from
7    the issuing jurisdiction and does this using the data received from the [AAMVA]." (SAC
8    ¶ 62.) Furthermore, the attached exhibit shows that the accused products recognize
9    various formats, including military or Canadian IDs. (*Id.*, Ex. F.) Although the
10   complaint does not explicitly use the term "reference license format," the court can
11   reasonably infer that the issuing jurisdiction format, whether that is an AAMVA format, a
12   military ID format, or a Canadian ID format, constitutes the reference license format.
13   Intellicheck's decision to describe the accused products rather than to restate patent
14   language is not, as Honeywell contends, a failure to state a claim.

15          The same is true regarding jurisdictional segments and the predetermined values
16   of those jurisdictional segments. Again, Intellicheck alleges in its complaint that the
17   accused products parse the read information into "jurisdictional segments that each have
18   predetermined values," such as the formatting of a person's name, ID number, or date of
19   birth. (SAC ¶ 63.) Intellicheck then claims that the accused products compare the format
20   of the read information to the predetermined format to ensure a match. (*Id.*) Such
21   allegations are sufficient to demonstrate a plausible claim for relief. *See Atlas IP LLC*,
22   2016 WL 1719545, at *2.

1   Honeywell next contends that Intellicheck fails to allege a checksum comparison

2   because the complaint does not allege the performance of arithmetic or logical operations

3   on the read data itself. (3d MTD at 15.) Again, Honeywell makes too much of a small

4   distinction. Intellicheck alleges that the accused products "complete[] a checksum

5   wherein the scanner compares the human recognizable information with the machine

6   coded information to ensure they match." (SAC ¶ 63.) This claim is sufficient for the

7   court to infer that the accused products perform operations in the completion of a

8   checksum, and then compare those results against each other. Indeed, the complaint uses

9   the language "checksum *from* the human recognizable information" and "checksum *from*

10  the machine coded information" (*id.* (emphasis added)), which implies the performance

11  of the operations that Honeywell contends are missing from Intellicheck's allegations.

12      Lastly, Honeywell argues that Intellicheck fails to allege that the accused products

13  display a verification signal upon a match. (3d MTD at 14.) This argument belies both

14  the allegations in the complaint and the supporting exhibits. First, Intellicheck states that

15  the accused products generate a signal to indicate the result of the check, such as

16  outputting zeroes if the ID is expired. (SAC ¶ 63.) Second, a product manual attached to

17  the complaint shows that an "Accepted" or "Rejected" signal is displayed after the ID is

18  scanned by the accused product. (*Id.*, Ex. M at 9.) Accepting these allegations as true—

19  as the court must at this stage—the court concludes that Intellicheck has demonstrated

20  that the accused products display a verification signal.[7]

21

22      [7] Honeywell challenges the alleged infringement of Claim 15 for the same reasons. (*See* 3d MTD at 15-16.) The court rejects these challenges for the reasons stated above.

1    In sum, the court finds that Count III does more than "name a product and baldly

2    conclude that it infringes a patent which belongs to [p]laintiff." *See Incom Corp.*, 2016

3    WL 4942032, at *3. Accordingly, the court denies Honeywell's motion to dismiss this

4    count for failure to state a claim.

5        3. Count V

6        Honeywell argues that Count V fails to state a claim in two ways. First,

7    Honeywell contends that Count V fails "to allege that the accused products compare an

8    extracted information segment to predetermined acceptance criteria." (3d MTD at 17.)

9    Second, Honeywell purports that Count V does not plead "the existence of any storage

10   means" or the fact that the accused products retrieve reference data from a storage

11   means." (*Id.* at 17.) The court disagrees with both arguments.

12       Honeywell's first argument centers on the contention that the complaint does not

13   allege the comparison of the extracted information itself to a predetermined acceptance

14   criteria, but instead alleges the comparison of an age calculated from the extracted

15   information to a predetermined acceptance criteria. (*Id.*) But the complaint states that

16   "the information extracted" is compared to "a certain predetermined acceptance criteria."

17   (SAC ¶ 86.) While it is true that the complaint also alleges that the products calculate the

18   age of the person, the claim that the accused products determine "whether the information

19   extracted meets a certain predetermined acceptance criteria" is sufficient at this stage for

20   the court to reasonably infer that the extracted information is being compared by the

21   accused products.

22   //

1     Furthermore, the court does not agree that Intellicheck fails to allege that the

2     accused products utilize a storage means. Although the complaint does not utilize the

3     words "storage means," it does allege that the accused products utilize reference

4     information, such as the various jurisdictional formats. (*See* SAC ¶ 86; Ex. F at 2.)

5     Honeywell updates this reference information, and the accused products may upload

6     these updates into the accused products. (SAC, Ex. G at 25-26.) These alleged facts

7     support the inference that the accused products maintain some storage means that keeps

8     and updates this reference information. This reasonable inference is sufficient at this

9     stage, and accordingly, the court denies the motion to dismiss this count.

10         4. Count VII

11     Honeywell next challenges the adequacy of Count VII to state a claim of direct

12     infringement. First, Honeywell avers that Intellicheck failed to allege any "identifier

13     corresponding to an issuing jurisdiction of the driver license" that the accused products

14     determine from the read information. (3d MTD at 18.) Second, Honeywell maintains

15     that Intellicheck fails to plead that the accused products display a calculated age, as

16     required by the '437 Patent. (*Id.* at 18-19.) The court again disagrees and finds that

17     Intellicheck sufficiently alleges factual allegations to support Count VII.

18         Count VII alleges that the accused products read machine-readable information

19     from a driver's license. (SAC ¶ 108.) Included among the read information is the Issuer

20     Identification Number ("IIN"), which—as the name suggests—identifies the jurisdiction

21     that issued the license. (*Id.*, Ex. F at 2.) Therefore, the IIN qualifies as "an identifier

22     corresponding to an issuing jurisdiction of the driver license," as required by Claim 14 of

1  the '437 Patent. (*See* '437 Patent 16:11-12.) Moreover, the fact that the accused

2  products must read an identifier of some sort can be inferred from the allegations that

3  these accused products can distinguish and operate on IDs from varying jurisdictions,

4  many with varying formats. (*See* SAC, Ex. F at 2.) In order to accurately read these IDs

5  from various jurisdictions, it is reasonable to infer that the accused products must, at

6  some point, utilize an identifier and determine which jurisdiction the license is from.

7      Furthermore, Intellicheck has adequately pleaded that the accused products

8  display a calculated age. One of the product manuals attached to the complaint shows

9  that the accused product displays a signal after verifying the age. (*Id.*, Ex. M. at 8-10.)

10  One example of the signal reads "CustomerAge:21-ID Accepted"; another states

11  "CustomerAge:12-ID Rejected." (*Id.*) Honeywell contends that "[t]he inclusion of the

12  numbers '21' and '12' are not alleged to be a person's calculated age and nothing in

13  Exhibit M indicates what the numbers reference." (3d MTD at 19.) Such a contention

14  flies in the face of the label directly preceding these numbers: "CustomerAge." (*See*

15  SAC, Ex. M at 10.) From that label, it is reasonable to infer that the accused products

16  display a calculated age after scanning the driver's license. Therefore, the court finds that

17  Intellicheck has plausibly alleged that Honeywell is liable for directly infringing Claim

18  14 of the '437 Patent.

19      5. Count IX

20      Honeywell argues that Intellicheck does not adequately plead direct infringement

21  of Claim 22 of the '751 Patent because it does not allege that the accused product had "an

22  identification data structure [or] a reference structure" that is used to read, store, and

1    parse the license and reference data. (3d MTD at 20.) Honeywell additionally states that

2    Intellicheck "does not allege that the accused products include any of [the] elements" of

3    Claim 32. (*Id.*)

4         As was the case with the other counts of direct infringement, although Intellicheck

5    does not use the exact words present in the '751 Patent, Intellicheck has adequately

6    pleaded factual content that allows the court to draw the reasonable inference that

7    Honeywell is liable for the infringement alleged. For instance, although the complaint

8    does not use the term "identification data structure" (*see generally* SAC), Intellicheck

9    alleges that the accused product reads information from licenses and thus presumably

10   must store that data, even if temporarily (*see, e.g., id.* ¶ 131). And although the

11   complaint does not use the phrase "reference data structure" (*see generally id*),

12   Intellicheck alleges that the products are used "along with a computer and access point"

13   and support a plurality of jurisdictional formats (*see, e.g., id.*; *id.*, Ex. G at 3); the

14   reference formats of those various jurisdictions presumably must also be stored

15   somewhere accessible by the accused products. Finally, Intellicheck alleges that the

16   accused products parse the information (*see, e.g., id.* ¶ 131) and must be able to compare

17   the read and reference information, as the accused products are advertised in their product

18   manuals to be able to read and output information read from licenses issued by various

19   jurisdictions (*see id.*, Exs. F, G).

20        Honeywell also contends that Intellicheck fails to state the direct infringement of

21   Claim 32, which requires a "parser component," a "reference component," a

22   "conformance component," and an "output component." (3d MTD at 20.) But

1  Intellicheck asserts that the accused products parse the information—a parser component;

2  consults the formats of the issuing jurisdiction—a reference component; determine

3  whether the person is authorized to perform the action—a conformance component; and

4  indicates whether or not the person can perform the action—an output component. (*E.g.*,

5  SAC ¶ 131.) These factual allegations are sufficient for the reasonable inference that the

6  accused products directly infringed Claim 32 of the '751 Patent.

7      In sum, Honeywell's motion to dismiss the direct infringement claims fails

8  because Honeywell seeks strict conformance to the language used in the Patents-in-suit

9  that is not required at the pleading stage. Indeed, the court is permitted to make

10  reasonable inferences from the factual allegations made in the complaint and the

11  information attached. *See Iqbal*, 556 U.S. at 678. Intellicheck does more than "[m]erely

12  nam[e] a product" and "provid[e] a conclusory statement that [Honeywell] infringes a

13  patent." *See Incom Corp.*, 2016 WL 4942032, at *3. Instead, the complaint does exactly

14  what *Bender v. LG Elecs. U.S.A., Inc.* deems sufficient under the pleading standards of

15  *Twombly* and *Iqbal*. *See* 2010 WL 889541, at *6. Intellicheck describes the Patents-in-

16  suit, names the accused products, and details how the accused products do what the

17  Patents-in-suit protect. *See id.* Therefore, Intellicheck raises plausible claims that the

18  accused products are directly infringing the Patents-in-suit. *See id.* Accordingly, the

19  court denies Honeywell's motion to dismiss the direct infringement counts.

20  **C.  Indirect Infringement Counts**

21      "Whoever actively induces infringement of a patent shall be liable as an

22  infringer." 35 U.S.C. § 271(b). To prove indirect infringement, the patentee "must show

direct infringement, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks omitted). Thus, Intellicheck must plead facts "plausibly showing that [Honeywell] specifically intended [its] customers to infringe the [Patents-in-suit] and knew that the customers' acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Honeywell argues that Intellicheck's five indirect infringement claims should be dismissed for three reasons. (*See generally* 3d MTD.) The first of these reasons—that Intellicheck fails to adequately plead direct infringement—fails because, as discussed above, the court finds the allegations of direct infringement to be sufficient. *See supra* § III.B. The court now addresses Honeywell's two remaining arguments: (1) that Intellicheck fails to adequately plead Honeywell's knowledge of the Patents-in-suit (3d MTD at 22-25); and (2) that Intellicheck does not adequately plead that Honeywell took affirmative steps to bring about infringement (*id.* at 26-27).

1. Honeywell's Knowledge of the Patents-in-Suit

Indirect infringement requires that the defendant's conduct occurred after it knew of the patents-in-suit. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). Honeywell contends that Intellicheck fails to plead knowledge because Intellicheck relies only upon notice given after the original complaint was filed. (3d MTD at 22.) In other words, Honeywell alleges that Intellicheck pleads only post-suit knowledge, which Honeywell maintains is legally insufficient. (*See id.*)

1    At the outset, not every count of indirect infringement relies upon post-suit

2    knowledge. Intellicheck alleges that Honeywell has been on notice of the '623 Patent

3    and the '416 Patent since October 15, 2007, when Honeywell acquired a company that

4    previously contracted with Intellicheck. (SAC ¶ 16.) Intellicheck claims that former

5    employees of the acquired company had knowledge of the '623 and '416 Patents and then

6    utilized that knowledge to develop the accused products. (*Id.* ¶¶ 17-21.) Furthermore,

7    Intellicheck asserts that Honeywell received notice of the '437 Patent through another

8    former Intellicheck employee who was "intimately familiar with Intellicheck's . . .

9    patents, including the '437 Patent." (*Id.* ¶ 24.) This employee was allegedly hired by

10   Honeywell in December of 2010. (*Id.*) These factual allegations allow the court to make

11   the reasonable inference that Honeywell had actual notice of the '623, '416, and '437

12   Patents before the original complaint was filed in this suit. Accordingly, the court finds

13   that knowledge is sufficiently pleaded for the corresponding indirect infringement counts

14   IV, VI, and VIII.

15       As for the remaining indirect infringement counts II and X, Intellicheck bases

16   Honeywell's knowledge only on the notice letter sent on March 8, 2016—a day after

17   Intellicheck filed the original complaint in this suit.[8] (*Id.* ¶¶ 27, 29.) Thus, for these two

18   //

19

20       [8] It is unclear from the operative complaint whether the employees who had knowledge
     of the '623, '416, and '447 Patents also had knowledge of the '067 and '751 Patents. While
21   Intellicheck alleges generally that these employees "had knowledge of the Patents-in-Suit" (SAC
     ¶ 15), Intellicheck does not later rely on these employees to assert actual notice of the '067 and
22   the '751 Patents (*see id.* ¶¶ 27, 29). Thus, the court presumes that these employees did not have
     knowledge of those two Patents.

counts, the issue boils down to whether post-suit knowledge, or knowledge gained from the filing of the lawsuit, can satisfy the knowledge requirement.

The district courts that have addressed this issue are sharply divided.[9] The majority of district courts have held that post-suit knowledge satisfies the knowledge element for indirect infringement. *See, e.g., Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 881 (E.D. Va. 2013); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012) ("A defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*."). The minority of courts have held post-suit knowledge insufficient. *See, e.g., Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at *7 (C.D. Cal. May 16, 2012); *Xpoint Tech., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010).

The court adopts the reasoning articulated by the majority of district courts and concludes that post-suit knowledge satisfies the knowledge element for indirect infringement. *See Rembrandt Social Media*, 950 F. Supp. 2d at 881. As other courts have explained, what matters is that the putative infringer has knowledge of the patents-in-suit and continues to allegedly infringe with that knowledge, whether that knowledge is obtained through pre-suit or post-suit notice. *See id.* at 882; *Walker*

---

[9] The Federal Circuit has yet to decide the issue. *See CAP Co., Ltd. v. McAfee, Inc.*, Nos. 14-cv-05068-JD, 14-cv-05071-JD, 2015 WL 3945875, at *4 (N.D. Cal. June 26, 2015). However, without directly addressing the issue, the Federal Circuit has upheld the sufficiency of certain indirect infringement claims based solely on post-suit knowledge. *See Bill of Lading*, 681 F.3d at 1345-46.

1   *Digital*, 852 F. Supp. 2d at 565 ("[T]here is no legal impediment to having an indirect

2   infringement cause of action limited to post-litigation conduct.").  As long as the

3   defendant has knowledge of the patents-in-suit and yet continues to engage in potentially

4   infringing conduct, a plaintiff can maintain an indirect infringement count.  There should

5   be no difference for an alleged infringer learning of the patent a minute before the

6   complaint is filed and one who learns of the patent a minute after.  And yet, Honeywell

7   proposes a bright-line rule that would bring about exactly this arbitrary result.  The court

8   sees no reason to adopt such a rule.

9       Honeywell insists that if post-suit knowledge is allowed, the pleading requirement

10  of knowledge would be eviscerated, as every complaint would be "an unfair 'bootstrap'

11  for Plaintiffs to allege liability for acts done without any knowledge." (3d MTD at 25

12  (quoting *Proxyconn Inc.*, 2012 WL 1835680, at *5).)  Not so.  The impact of relying on

13  post-suit knowledge is that a plaintiff may recover damages only for the period of time

14  that commences once the putative infringer learns of the patent.  *See Rembrandt Social*

15  *Media*, 950 F. Supp. 2d at 882.  In other words, a plaintiff cannot utilize post-suit

16  knowledge to recover damages resulting from any pre-suit indirect infringement; instead,

17  damages are limited to products sold after the defendant learned of the patents-in-suit.

18  *See CAP Co., Ltd. v. McAfee, Inc.*, Nos. 14-cv-05068-JD, 14-cv-05071-JD, 2015 WL

19  3945875, at *5 (N.D. Cal. June 26, 2015).  Indeed, Intellicheck does not dispute this limit

20  on damages.  (*See* Resp. at 13.)  Thus, post-suit knowledge would not, as Honeywell

21  fears, support liability for pre-suit acts committed without any knowledge.

22  //

1    Honeywell relies heavily on *Proxyconn*, a Central District of California case that

2 dismissed indirect infringement allegations relying on the suit itself for establishing

3 knowledge. 2012 WL 1835680, at *7. In that case, the court reasoned that requiring a

4 plaintiff to plead knowledge based on facts other than the filing of the present lawsuit

5 "furthers judicial economy and preserve parties' resources by encouraging resolution

6 prior to filing a lawsuit." *Id.* at *5. *Proxyconn* also expressed concern for a defendant

7 who ceases all activity after receiving notice of the suit and yet must maintain the suit

8 until summary judgment to show that it lacked knowledge at the time its acts of

9 inducement occurred. *Id.* at *7.

10    *Proxyconn* raises legitimate concerns. But "the cure imposed in *Proxyconn* is

11 worse than the purported disease." *CAP Co.*, 2015 WL 3945875, at *5. Rather than

12 promoting out-of-court resolution, *Proxyconn*'s bar on post-suit knowledge would more

13 likely result in "tactical maneuvers reminiscent of the bad old days when pleading was a

14 highly formalistic game," where the plaintiff could simply manipulate the pleading rules,

15 such as filing an amended complaint or a supplemental pleading. *See id.* Alternatively,

16 the claims would be dismissed without prejudice, and the plaintiff would simply refile an

17 amended complaint alleging the same indirect infringement claims but with notice of the

18 patient based on the filing of the original complaint. *See Rembrandt Social Media*, 950 F.

19 Supp. 2d at 882. Doing so would not further judicial economy. Moreover, *Proxyconn*'s

20 concern for the defendant who ceases any infringing activity upon notice of the suit is

21 addressed by the limit on damages; such a limit incentivizes the plaintiff to drop its suit if

22 infringing activities immediately cease because there would be no recoverable damages.

Indeed, courts in the Central District of California have since disagreed with *Proxyconn*, holding instead that post-suit knowledge is sufficient. *See MyMedical Records, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1025 (C.D. Cal. 2014). *MyMedical Records* held that "[a] defendant should not be able to escape liability for post[-]filing infringement when the complaint manifestly places the defendant on notice that it allegedly infringes the patents-in-suit." *Id.* Holding otherwise, the court reasoned, "would give a defendant carte blanche to continue to indirectly infringe a patent—now with full knowledge of the patents-in-suit—so long as it was ignorant of the patents prior to being served itself with the complaint." *Id.*

The court agrees with *MyMedical Records* and the majority of courts to have considered this issue. *See Rembrandt Social Media*, 950 F. Supp. 2d at 881. The knowledge gleaned from notice of suit or service of the complaint satisfies the knowledge requirements of *Global-Tech*. *See* 563 U.S. at 765-66. Although a plaintiff alleging indirect infringement may rely upon post-suit knowledge, doing so prohibits the plaintiff from collecting damages related to any pre-filing conduct.

Accordingly, here, the court denies Honeywell's motion to dismiss Intellicheck's indirect infringement counts based upon an insufficient allegation of knowledge. Counts IV, VI, and VIII allege that Honeywell obtained knowledge of the Patents-in-suit through its employees who had worked with Intellicheck. (*See* SAC ¶¶ 16-24.) Thus, Intellicheck pleads adequate pre-suit knowledge for these indirect infringement counts. As for Counts II and X, Intellicheck pleads only post-suit knowledge, relying upon its March 8, 2016, notice letter. The court finds that this post-suit knowledge is sufficient,

1  but Intellicheck is limited to recovering only for any continuing infringing conduct

2  Honeywell engaged in after receiving this notice.

3      2.  <u>Affirmative Steps Taken by Honeywell</u>

4      Honeywell lastly argues that Intellicheck failed to plead "any facts showing that

5  Honeywell took affirmative steps to induce customers to infringe any claims of the

6  Patents-in-[s]uit." (3d MTD at 26.)  A claim of indirect infringement "must contain facts

7  plausibly showing that [the defendant] specifically intended their customers to infringe

8  the [patents]." *Bill of Lading*, 681 F.3d at 1339.  This affirmative intent can be pleaded

9  through allegations of active steps taken by the defendant, such as "advertising an

10  infringing use or instructing how to engage in an infringing use." *Metro-Goldwyn-Mayer*

11  *Studios Inc. v. Grokster, Ltd.*, 545 U.S. 9113, 936 (2005).[10]  "Courts have found

12  inducement allegations sufficient when, for example, the complaint contain 'factual

13  allegations setting forth the similarities between the patent claims and the advertised

14  features of the [defendant's] products." *Bascom Research LLC v. Facebook, Inc.*,

15  Nos. C12-6293SI, C12-6294SI, C12-6295SI, C12-6296SI, C12-6297SI, 2013 WL

16  968210, at *5 (N.D. Cal. Mar. 12, 2013).

17      Honeywell relies on *Bascom Research*, in which the court concluded that the

18  allegations of indirect infringement were insufficient.  (3d MTD at 26-27); *see Bascom*

19  *Research*, 2013 WL 968210, at *5.  In *Bascom Research*, the court considered a

20

21      _____

      [10] Although *Grokster* is a copyright infringement case, the Federal Circuit has applied
22  *Grokster*'s layout of the law surrounding indirect infringement to patent infringement cases.  *See*
      *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

1   complaint that listed only "the titles and dates of issuance of the patents-in-suit, and

2   contain[ed] no allegations regarding what those patents claim." 2013 WL 968210, at *5.

3   There were "no allegations setting forth the similarities between the claims of the

4   patents-in-suit and the defendants' products," and no "specific allegations about how

5   defendants have advertised an infringing use or instructed customers or their parties

6   regarding how to engage in an infringing use." *Id.* Accordingly, the court dismissed the

7   indirect infringement claim. *Id.*

8        But here, Intellicheck asserts much more than just the "titles and dates of issuance

9   of the patents-in-suit." *See id.* at *5. Intellicheck describes the Patents-in-suit and sets

10  forth how the accused products are similar to the claims at issue. (*See, e.g.*, SAC ¶¶ 37-

11  43); *supra* § III.B. Additionally, Intellicheck includes allegations of how Honeywell

12  advertised and promoted these accused products "in such a way that provides instructions

13  or directions to its customers and users on how to practice the claimed invention." (*E.g.*,

14  *id.* ¶ 50.) It further asserts that Honeywell's literature instructed users on how to use the

15  accused products in a manner that infringes the Patent-in-suits. (*E.g.*, *id.* ¶ 52.)

16  Intellicheck also claims that Honeywell provided instructions to licensees that allowed

17  them to practice the claimed inventions. (*E.g.*, *id.* ¶ 50.) And lastly, Intellicheck claims

18  Honeywell's customers are indeed responding to the Honeywell literature and "using the

19  accused products to authenticate driver's licenses." (*E.g., id.* ¶ 53.) Intellicheck supports

20  these allegations with product manuals and pamphlets illustrating these advertisements

21  and instructions. (*E.g., id.*, Exs. G, F, M.)

22  //

1    The court finds that these allegations are sufficient to survive Honeywell's motion

2    to dismiss. Taken as true, they detail affirmative steps taken by Honeywell, advertising

3    to and instructing others, whether they are licensees or customers, to utilize the accused

4    products in an infringing manner. *See Grokster*, 545 U.S. at 936; *Bascom Research*,

5    2013 WL 968210, at *5. These factual allegations suffice to plausibly show that

6    Honeywell specifically intended for others to infringe upon the Patents-in-suit. *See Bill*

7    *of Lading*, 681 F.3d at 1339. Accordingly, the court denies Honeywell's motion to

8    dismiss the indirect infringement counts on this ground.

9    In sum, the court finds Intellicheck to have adequately stated claims of direct and

10    indirect infringement. Accordingly, the court denies Honeywell's motion to dismiss in its

11    entirety.

12    **IV.    CONCLUSION**

13    For the foregoing reasons, the court DENIES Honeywell's motion to dismiss (Dkt.

14    # 82).

15    Dated this 21ˢᵗ day of November, 2017.

16

17    JAMES L. ROBART
      United States District Judge

18

19

20

21

22