UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTELLICHECK MOBILISA, INC., <br><br> Plaintiff, <br><br> v. <br><br> HONEYWELL INTERNATIONAL INC., <br><br> Defendant. | CASE NO. C16-0341JLR <br><br> CLAIM CONSTRUCTION ORDER |

## I. INTRODUCTION

This matter comes before the court on the parties' dispute regarding one claim term in United States Patent No. 7,478,067 ("the '067 Patent"), entitled "Authentication System for Identification Documents." (*See* SAC (Dkt. # 74), Ex. A ("'067 Patent").) The court has reviewed the parties' claim construction briefs (Intellicheck Op. Br. (Dkt. # 87); Honeywell Op. Br. (Dkt. # 89); Intellicheck Resp. (Dkt. # 92); Honeywell Resp. (Dkt. # 90)), all materials filed in support thereof, the relevant portions of the record, and

the relevant case law. The court also heard oral argument from the parties at a *Markman* hearing on December 15, 2017. (*See* 12/15/17 Min. Entry (Dkt. # 97).) Being fully advised, the court declines to construe the disputed term for the reasons set forth below.

## II. BACKGROUND

This is a patent infringement case involving systems and methods for verifying the authenticity of identification documents, such as driver licenses (the "Invention"). Plaintiff Intellicheck Mobilisa, Inc. ("Intellicheck") owns five patents covering the Invention; only one, the '067 Patent, is at issue here. (*See* SAC ¶ 11; *see also* Jt. Statement (Dkt. # 85).) Intellicheck asserts that Defendant Honeywell International Inc. ("Honeywell") has directly infringed upon and induced infringement of its patents-in-suit, including the '067 Patent. (SAC ¶¶ 13-14, 34-57.)

The court has previously construed the '067 Patent, along with the four other patents at issue, in another patent infringement case brought by Intellicheck with the same counsel representing both parties in the two suits. (*See generally* Dkt.); *see also Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC*, No. C15-0366JLR (Dkt. # 68) ("*Wizz* Cl. Constr. Order"). Because of this previous claim construction order, Intellicheck and Honeywell were able to largely agree on many of the disputed terms. However, one term in the '067 Patent remains in dispute:

1. first circuitry at said first location for receiving the information read from the driver license and determining whether the read information read [sic][1] comports with said predetermined format

---

[1] In quoting a passage from the '067 Patent that appears to contain a typographical error, the court will use "[sic]" the first time it quotes the passage but not in any subsequent quotations to the same passage.

ORDER - 2

('067 Patent at 15:1-4.) The court now discusses claim construction law and its application to this disputed term.

### III.  DISCUSSION

**A. Law of Claim Construction**

    1. <u>Generally</u>

The court has the sole responsibility for construing patent claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). In practice, executing the *Markman* mandate means following rules that rank various sources of evidence illustrating the "true" meaning of claim terms.

Intrinsic evidence, which includes the patent and its prosecution history, is the primary source from which to derive a claim's meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). The court's task is to determine the "ordinary and customary meaning" of the claim terms in the eyes of a person of ordinary skill in the art on the filing date of the patent. *Id.* at 1313 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In its review of intrinsic evidence, the court should begin with the language of both the asserted claim and other claims in the patent. *Id.* at 1314; *see also Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("[C]laim construction analysis must begin and remain centered on the claim language itself.").

The court must read claim language, however, in light of the remainder of the patent's specification. *Phillips*, 415 F.3d at 1316 ("[T]he specification necessarily informs the proper construction of the claims."). The specification acts as a

"concordance" for claim terms, and is thus the best source beyond the claim language for understanding those terms. *Id.* at 1315. But the court should not commit the "cardinal sin" of claim construction—impermissibly reading limitations from the specification into the claims. *Id.* at 1320 (citing *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). Additionally, although the patent's prosecution history is also intrinsic evidence, it is generally "less useful for claim construction purposes" than the specification. *Phillips*, 415 F.3d at 1317. Because the prosecution history documents an invention's evolution from application to the issuance of the patent, it usually "lacks the clarity of the specification." *Id.*

Finally, the court can consider extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citing *Markman*, 52 F.3d at 980). For a variety of reasons, extrinsic evidence is usually "less reliable than the patent and its prosecution history" as a source for claim interpretation. *Id.* at 1318. The court thus need not admit extrinsic evidence, but may do so at its discretion. *Id.* at 1319.

2. <u>Means-Plus-Function Limitations</u>

Means-plus-function limitations are recognized by 35 U.S.C. § 112, ¶ 6. 35 U.S.C. § 112(f) ("An element . . . may be expressed as a means or step for performing a specified function without the recital of structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."). "Claim construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent

that performs that function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (citing *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005)).

**B. Construction of Disputed Term**

The term "first circuitry at said first location for receiving the information read from the driver license and determining whether the read information read comports with said predetermined format" appears in Claim 1 of the '067 Patent. ('067 Patent at 15:1-4.) The parties dispute whether this is a § 112, ¶ 6 means-plus-function limitation, and, if so, what the scope of the structure is. (*See* Intellicheck Op. Br. at 1; Honeywell Op. Br. at 1.)

Honeywell proposes that the court find this term to be a means-plus-function limitation and construe it as "a processor whose actions are directed by the algorithm specified in Table 5 of the '067 Patent, or equivalent structure" used for "receiving the information read from the driver license and determining whether the read information read comports with said predetermined format." (Honeywell Op. Br. at 19-20.) Honeywell contends that this term fails to recite sufficiently definite structure and recites function without reciting structure for performing that function. (*Id.* at 8.) "Circuitry," Honeywell maintains, is merely a nonce word that provides no more structure than the term "means" does. (*See id.* at 11-15.)

Intellicheck disagrees that this term is a means-plus-function limitation and thus argues that no construction is needed. (*See* Intellicheck Op. Br.) Intellicheck points out that the term does not recite "means for" and thus is presumptively not a

means-plus-function limitation; Intellicheck contends that Honeywell has not overcome that presumption. (*Id.* at 3-4.) Moreover, Intellicheck relies on several Federal Circuit cases that have found a "circuit" or "circuitry" term to recite sufficient structure to avoid means-plus-function treatment. (*Id.* at 4-5; Intellicheck Resp. at 2-7.)

The court finds that Honeywell has not met its burden to show that this term fails to recite sufficient structure or recites function without reciting sufficient structure for performing that function. Thus, the court concludes that the term is not a means-plus-function limitation and declines to construe this term.

Under Federal Circuit precedent, if a disputed claim term does not employ the word "means," a presumption arises that the term is not a means-plus-function term. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015). The challenger can rebut that presumption by demonstrating that a person of ordinary skill in the art would not understand the term to have sufficiently definite meaning as a name for structure. *See id.* at 1349. The challenger must demonstrate that, to a person of ordinary skill in the art, the term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. *Id.*; *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003). In determining whether a term recites sufficient structure, the court examines whether the term has "an understood meaning in the art." *Apex*, 325 F.3d at 1372. "In the absence of sufficient evidence, the presumption stands." *Id.* at 1373.

Intellicheck and Honeywell agree that the term at issue does not contain the word "means" and thus, the court begins with the presumption that it is not a

means-plus-function limitation. (*See* Intellicheck Op. Br. at 3-4; Honeywell Op. Br. at 6-7.) Honeywell seeks to rebut this presumption with two arguments: (1) the "first circuitry" term fails to recite sufficiently definite structure; and (2) the "first circuitry" term recites function without reciting sufficient structure for performing that function.[2] (Honeywell Op. Br. at 2.) The court disagrees with both contentions.

First, Honeywell does not demonstrate that the claim fails to recite sufficiently definite structure. To the contrary, the Federal Circuit has repeatedly recognized that "circuit" and "circuitry" "by itself connotes some structure." *Apex*, 325 F.3d at 1373; *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) ("Technical dictionaries, which are evidence of the understandings of persons of skill in the technical arts, plainly indicate that the term 'circuit' connotes structure.").[3] Thus, "when the structure-connoting term 'circuit' is coupled with a description of the circuit's

---

[2] Intellicheck urges the court to adopt its previous construction of the "first circuitry" term in *Wizz* because Honeywell allegedly relied upon that previous claim construction order when submitting a Covered Business Method ("CBM") Petition to the Patent Trial and Appeal Board ("PTAB"). (Intellicheck Op. Br. at 2-3.) But Honeywell did not urge the PTAB to adopt the construction of the "first circuitry" term at issue here. Instead, Honeywell's CBM petition concerned another patent altogether—the '751 Patent. (*See* Davis Decl. (Dkt. # 88) ¶ 2, Ex. A.) Thus, Honeywell has not, as Intellicheck suggests, condoned the *Wizz* construction of "first circuitry" such that the court may simply adopt the previous construction without analysis.

[3] Honeywell points to the fact that the "first circuitry" claim is in a "[noun] for [function]" format and that "circuitry" is used throughout the '067 Patent to refer to different structures. (Honeywell Op. Br. at 9-10, 13-15.) But *Linear Tech* considered a variety of similarly formatted "circuitry" terms, such as "a first circuit for monitoring a signal . . . a second circuit for generating a first control signal . . . [and] a third circuit for generating a second control signal . . . ." 379 F.3d at 1316. None of these claims were found to be means-plus-function limitations, despite the fact that they are also written in a "[noun] for [function]" format and use "circuitry" to refer to different structures. *See id.* at 1320-21. Thus, as illustrated by precedent, Honeywell's arguments regarding the formatting of the term-at-issue are insufficient.

operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art, and § 112, ¶ 6 presumptively will not apply." *Linear Tech.*, 379 F.3d at 1320; *see also Mass. Inst. of Tech. & Elec. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1355 (Fed. Cir. 2006) ("[T]he term 'circuit,' combined with a description of the function of the circuit, connoted sufficient structure to one of ordinary skill in the art of avoid 112 ¶ 6 treatment.").

Following this Federal Circuit guidance, district courts considering a "circuit" or "circuitry" term have overwhelmingly concluded that it is not a means-plus-function limitation. *See, e.g., Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, Nos. 2:14-cv-0911-JRG-RSP, 2:14-cv-9012-JRG-RSP, 2015 WL 6956722, at *16-17 (E.D. Tex. Nov. 9, 2015). Indeed, even when "circuit" is paired with the word "means," district courts have determined that the term connotes sufficient structure. *See, e.g., CellNet Data Sys., Inc. v. Itron, Inc.*, 17 F. Supp. 2d 1100, 1109 (N.D. Cal. 1998) (concluding that "circuit means" is not a means-plus-function limitation because "the word circuit discloses a definite structure"). At the *Markman* hearing, the court asked Honeywell to identify any district court or Federal Circuit case that has found "circuitry" to be a means-plus-function limitation. Honeywell conceded that it could not.

The "first circuitry" term at issue here likewise connotes sufficient structure. Not only does "circuitry" indicate some structure by itself, but the contextual language in Claim 1 further describes the circuitry's operation: to determine whether the read information comports with a predetermined format and to output the read information to a remote location for further processing. ('067 Patent at 15:1-15:7); *see Linear Tech.*,

379 F.3d at 1320. Moreover, the "first circuitry" term indicates the inputs—information read from the driver license; the location of this circuitry—at the first location where the information reader is; and how this circuitry is connected with other structures—via a signal path. (*See* '067 Patent at 15:1-7); *see also CellNet*, 17 F. Supp. 2d at 1109. Thus, like the term-at-issue in *Mass. Inst.*, the "first circuitry" claim term "does not merely describe a circuit; it adds further structure by describing the operation of the circuit." *See* 462 F.3d at 1356. The specification further describes the connections between the various components, noting, for example, that the "modem [] is interconnected to the CPU [] by way of signal path [] and allows the CPU [] to share its input and manipulated data, as well as the contents of its storage information, with the remote computer [] via the signal path [], which is typically established by a telephone communication link." (*Id.* at 4:16-4:21.) All in all, the claim language and the specification conveys sufficient structural meaning to persons of ordinary skill in the art.

Honeywell has not proffered sufficient evidence to the contrary.[4] Honeywell relies heavily on precedent that does not involve the term "circuit" or "circuitry." (Honeywell Op. Br. at 10-13 (citing *Williamson*, 792 F.3d at 1350; *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008)).) For instance, *Williamson* construed

---

[4] Honeywell asserts that the "circuit" terms analyzed in the Federal Circuit precedent had more detail and relied on additional information, such as technical dictionaries or expert testimony, that are not presented by Intellicheck here. (Honeywell Resp. at 8-12.) However, nothing in the case law suggests that the level of detail here mandates a different result. Moreover, Intellicheck carries no burden; thus, it is of no significance that Intellicheck does not introduce its own dictionary definitions or expert testimony. The court may rely on the numerous definitions of "circuit" that are contained within the precedent. *See, e.g., Linear Tech.*, 379 F.3d at 1320.

the term "module," 792 F.3d at 1350, and *Welker* considered the term "mechanism," 550 F.3d at 1096. Unlike the term "circuitry," the terms "module" and "mechanism" have been characterized by the Federal Circuit as "well-known nonce word[s]"; this term-specific precedent formed the foundation for both *Williamson* and *Welker*. *See Williamson*, 792 F.3d at 1350; *see also Welker*, 550 F.3d at 1096 (citing to previous case law that held "mechanism" to connote no more structure than the word "means"). As detailed above, the Federal Circuit has reached the opposite conclusion in regards to "circuit" and "circuitry." *See, e.g., Linear Tech.*, 379 F.3d at 1320. Thus, Honeywell's reliance on *Williamson* and *Welker* do not adequately rebut the presumption.

Neither does Honeywell's reliance on a PTAB case. (*See* Honeywell Op. Br. at 16 (citing *Toyota Motor Corp. v. Cellport Sys., Inc.*, No. IPR2015-00634, 2015 WL 4934779, at *6 (P.T.A.B. Aug. 14, 2015)).) Although Honeywell is correct that *Toyota Motor Corp.* found a "circuitry" term to "not convey any definite structure," 2015 WL 4934779, at *6, that case did not address any of the Federal Circuit or district court precedent analyzing the term "circuit," *see generally id.* Additionally, *Toyota Motor Corp.* has not been cited as authority by any subsequent district or Federal Circuit decision. But even if the court were to accept *Toyota Motor Corp.*'s reasoning, the case is distinguishable on its facts. The term construed there—"circuitry contained in a housing for receiving and transmitting signals carried through an air link"—is less specific than the term at issue here because it does not describe the inputs, the operations the circuit would perform on those inputs, or where the information would travel next. *Compare Toyota Motor Corp.*, 2015 WL 4934779, at *6, *with* ('067 Patent at 15:1-7.)

At the *Markman* hearing, Honeywell urged the court to utilize the "means" language in the '067 Patent's specification to rebut the presumption. In other words, Honeywell suggests that even though "means for" does not appear in the claim language, the use of the word "means" in the Summary of the Invention, and elsewhere in the description of the preferred embodiment, signals that the "first circuitry" term is a means-plus-function limitation. The court disagrees. As Intellicheck noted, there is no case law suggesting that the use of the word "means" in the Summary of the Invention constitutes evidence of a means-plus-function limitation. Moreover, accepting Honeywell's argument would mean that every claim in the '067 Patent falls within § 112, ¶ 6, as the Summary of the Invention utilizes "means for" to describe every aspect of the Invention. (*See* '067 Patent at 2:53-60 (describing the Invention's "means for reading, means for parsing, means for comparing, and means for displaying").) That cannot be.

Second, Honeywell also fails to establish that the "first circuitry" term contains insufficient structure for performing the recited function. Honeywell analogizes to *Rovi Guides Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2017 WL 3447989, at *22 (S.D.N.Y. Aug. 10, 2017), where the court analyzed the word "processor." (*See* Honeywell Op. Br. at 18.) After hearing undisputed expert witness testimony that an ordinary processor could not perform the functions listed in the claim, the *Rovi Guides* court concluded that "processor" does not, by itself, convey sufficient structure for performing the specific claimed function. 2017 WL 3447989, at *22. Accordingly, the court applied § 112, ¶ 6. *Id.* Honeywell maintains that the same can be said for the "first circuitry" term here.

But Honeywell overlooks a critical distinction. In *Rovi Guides*, an expert witness testified about the capabilities of general processors and how the recited function is more than a general function. *Id.* By contrast, Honeywell presents no specific evidence regarding the capabilities of general circuitry, whether circuitry would be able to perform the recited functions in Claim 1, or whether the recited functions in Claim 1 are more than general functions. (*See generally* Honeywell Op. Br.; Honeywell Resp.) Instead, Honeywell offers conclusory statements, asserting that "circuitry cannot make the required determination without programming to carry out an algorithm for achieving it."[5] (Honeywell Op. Br. at 17-18.) This attorney argument is not persuasive evidence to rebut the presumption that § 112, ¶ 6 does not apply. *Cf. Core Wireless*, 2015 WL 6956722, at *17 (rejecting attorney argument with no other persuasive evidence).

In sum, Honeywell has failed to carry its burden to demonstrate that the "first circuitry" term fails to recite sufficient structure. Accordingly, Honeywell has not rebutted the presumption that the "first circuitry" term falls outside of § 112, ¶ 6. Thus, the court concludes that the "first circuitry" term is not a means-plus-function limitation and declines to construe this term.

//

//

//

---

[5] Honeywell again points to the description of programming offered in the specification as evidence that general circuitry is not sufficient. (Honeywell Op. Br. at 18-19.) But Honeywell does not offer any evidence that this programming in the specification could not be performed by general circuitry, or that the specification description falls outside what a person of ordinary skill in the art would be able to deduce. Accordingly, the court rejects this argument.

## IV. CONCLUSION

For the foregoing reasons, the court DECLINES TO CONSTRUE "first circuitry at said first location for receiving the information read from the driver license and determining whether the read information read comports with said predetermined format."

Dated this 20th day of December, 2017.

JAMES L. ROBART
United States District Judge